# Zimmerman *versus* Eshbach.

The action of trespass for mesne profits, like the action of ejectment, may be equitable in its character.　Hence, where one is in possession of premises under a conveyance to hold until the payment of a mortgage debt, and on the trial of an ejectment against him by the purchaser of the title of the *cestui que trust*, the purchaser on the trial pays into court the amount of the mortgage debt, which, however, the defendant did not take out of court, but took a writ of error to the judgment against him, which was, however, affirmed: *Held*, that the defendant was liable for mesne profits from the time of the payment into court till the surrender of the possession.

ERROR to the Common Pleas of *Montgomery county*.

This was an action of trespass for mesne profits, brought by Joshua Zimmerman, plaintiff in error, and plaintiff below, against Abraham Eshbach, to recover the profits of certain premises from November 6, 1844, when the ejectment was brought, to May 1846, when possession was obtained.

In October 1842, Ludwig and Kirk, assignees, &c., sold at public sale, to one Henry Brower, a brew-house and lot of ground, situate in the borough of Norristown, for $800.　The deed was to be executed on the 1st April, 1843.　Brower paid $100 of the purchase-money, but, finding himself unable to raise the balance, applied to Christian Stetler, to loan him the $700, offering to execute a mortgage on said premises for the same.　Stetler, however, declined to loan the money to Brower on the terms proposed.　Brower then applied to Eshbach, the defendant in error, and requested him (Eshbach) to give his obligation to Stetler for the money.　Eshbach agreed to do this, provided Brower would secure him in the liability thus incurred.　In order to do this, Brower and his wife, after receiving the deed from the said assignees, on the 1st day of April, 1843, immediately conveyed the said premises, by deed, to Eshbach, to secure him as aforesaid, and Eshbach then, on the same day, executed a mortgage for $700, on the same, to Stetler, for Brower, which money was paid to the assignees as part of the purchase-money.　Shortly afterwards, Eshbach went into possession.

To August term 1844, the right, title, and interest of Brower,

in and to the said premises, was sold under judicial process, issued upon a judgment against him, and *Zimmerman*, the plaintiff in error, became the purchaser. On the 24th of August, 1844, a sheriff's deed for the premises was acknowledged and delivered to him: At the sheriff's sale, Eshbach gave notice that the property was his, and that he claimed to be the absolute owner of it in fee simple, by virtue of the deed above mentioned. Zimmerman then finding Eshbach in possession, and claiming the absolute property, brought an ejectment against him for the premises. This action of ejectment came to be tried on the 28th day of November, 1845, when Zimmerman paid into court $815,—"which, in case of a verdict and judgment in favor of the plaintiff in the above case, is to be applied to the payment of the mortgage given by the defendant to Christian Stetler, and the balance or overplus to be refunded to the plaintiff. If verdict and judgment are not rendered in favor of the plaintiff in the above case, then said $815 to be returned to the said plaintiff."

The jury rendered a general verdict in favor of the plaintiff. Eshbach took a writ of error to the Supreme Court, where the judgment was affirmed. The case is reported in 2 *Barr* 315, Eshbach *vs.* Zimmerman.

The $815 paid into court were taken out by Stetler and Eshbach.

After the determination of the ejectment case in the Supreme Court, Zimmerman obtained possession of the property, and then brought this action of trespass for mesne profits, and on the trial, the plaintiff having given in evidence the record of the ejectment, offered to show the annual value of the premises. On part of the plaintiff in error, it was alleged that the court, on objection made, rejected the testimony, and that plaintiff excepted.

The court charged the jury that, under the facts above stated, Eshbach *was not in possession as a tresspasser*, and that the action of trespass for mesne profits would not lie against him, and, therefore, that the plaintiff could not recover. To which charge the plaintiff excepted.

Verdict for defendant.

It was assigned for error :

1. The court erred in rejecting the testimony offered by plaintiff.

2. The court erred in charging the jury that, under the facts in the cause, Eshbach was not in possession as a trespasser, and that the action of trespass for mesne profits would not lie against him, and, therefore, that plaintiff could not recover.

The case was argued by *Boyd*, with whom was *Freedley*, for plaintiff in error.—In the case of Heckart *v.* Zerbe, 6 *Watts* 260, the jury had taken into consideration the rents and profits, and

[Zimmerman *v.* Eshbach.]

found their verdict accordingly.    The court erred in rejecting the
evidence.

The action of trespass for mesne profits in this State is equitable
in its character, like the action of ejectment : 3 *Barr* 97, Mears *v.*
The Presbyterian Church.

The defendant did not claim the possession as a trustee ; he de-
nied the trust, and claimed as absolute owner.    But if in possession
as trustee, he is responsible for the profits.

If, however, he was in possession under the mortgage, then, when
his liability ceased, he became a trespasser, and his liability was
determined by the payment of the money into court on the 28th
November, 1845.    He did not yield the possession till May 1845,
after the case had been affirmed in the Supreme Court.    He was
liable, at all events, for mesne profits between November and May.

*D. H. Mulvany*, with whom was *Rich*, for defendant in error.—
The court did admit the testimony referred to in the first assign-
ment of error.    2.  In charging that the plaintiff could not recover,
the court was sustained by the case of Heckart *v.* Zerbe, 6 *Watts*
260 ;  2 *Barr* 315 ;  2 *W. C. C. Rep.* 142 ;  1 *Bin.* 134, Frazer *v.*
Hallowell.

The action of trespass for mesne profits is founded on a *tort*, and
defendant was rightfully in possession till the trial of the ejectment.

The opinion of the court was delivered April 5, by

BELL, J.—The principles ascertained in Heckart *v.* Zerbe rule
this controversy, and settle the relative rights of the parties ; at
least up to the time of the rendition of the verdict in the ejectment.
This form of action is founded in a tortious possession of the land,
the subject of the ejectment, and therefore, obviously, up to the
point when wrongful possession commences, there is no room to
entertain trespass for *mesne profits*.    When the action of ejectment
between these parties was here, on the same facts that are now
disclosed, (2 *Barr* 313,) it was held to be a contest between a
trustee and *cestui que trust*, the defendant occupying the former
position, and the plaintiff the latter.    A consequence of this was
that, before a recovery could be had, either tender of the money
due to the defendant, before suit brought, or payment into court
afterwards, was essential.    Until one or the other of these requisites
were performed, the defendant could not be said to be in any de-
fault, for his possession was his security for repayment.    In ac-
cordance with this doctrine, it was ruled in Heckart *v.* Zerbe, that
where the recovery of a plaintiff in ejectment depends on an
equity, and is, consequently, conditional upon the payment or
tender of a sum of money due to the defendant, *mesne profits* are
not recoverable, except for the time running after the tender or
payment made.    There, there had been a conditional verdict in the

[Zimmerman *v.* Eshbach.]

ejectment, for plaintiff, stipulating the payment of a certain sum due the defendant, and the court said, in the action for mesne profits, "it would seem to be difficult to sustain this action, which is trespass, and must be considered as founded upon a tortious possession of the land taken by the defendant; but the jury, by their verdict, have found that he had a right to the *possession of it*, not only down to the time of the trial, but to retain it afterwards until he was paid by the plaintiffs the sum of $400; and it not appearing that he retained the possession beyond the time that he received the $400 mentioned in the verdict, there does not appear any pretence for saying that his possession of the land was, at any time, unlawful." This is decisive. In the case before us, there was an absolute verdict, only because the plaintiff, upon the cause being called for trial, paid into court the sum due to the defendant, to be taken out should the verdict be favorable. This, in effect, was the same thing as a conditional verdict. Like it, it was a concession of the plaintiff's right to hold the land until he was reimbursed. Had he *then* yielded the possession, there would have been *no* ground for this action. But, as was said in Heckart *v.* Zerbe, and Mears *v.* The Presbyterian Church, (3 *Barr* 97,) the action for mesne profits is with us an equitable one, and should be so moulded as, regardless of mere technicalities, to do substantial justice between the parties. While, on the one hand, a recovery in it should not be permitted merely because there has been a verdict for the plaintiff in an action of ejectment; on the other, one unjustly holding the land from an ascertainable period, ought not to be protected from accounting for the rents and profits, because the first verdict may find that, up to that period, his holding was not *tortious*. As illustrative of what is meant, the case before us may be instanced. The ejectment was brought to November term 1844, and called for trial 28th November, 1845, on which day the plaintiff paid into court $815, the sum for which the defendant had given his mortgage. On the same day a verdict was rendered for the plaintiff, of course in reference to the payment made for reimbursement of the defendant as trustee. Had the defendant then surrendered the possession, this action could not have been sustained, simply because, up to that time, the verdict, though for the plaintiff, had ascertained the prior adverse holding to be in accordance with the respective rights of the litigant parties. The former, however, chose to continue the contest; but, from the moment the money due him was within his power, he became a *tort feasor*. After that 'moment, he is not to be permitted to litigate at the expense of his antagonist. He cannot hold land and money both. It is not an answer to this proposition that he had not, in fact, the money until after the affirmance of the judgment by the court. He might have had it, had he so chosen; and the option being with him, he refused it at his own risk. So, had the plaintiff tendered

[Zimmerman *v.* Eshbach.]

the money before ejectment brought, I should have said the plaintiff's right to mesne profits would have commenced from the tender, though refused.   In both instances, the refusal to accept the sum due is at the defendant's hazard.  ˙This is consistent with all analogies, as it is with reason and justice.

The first judgment was not affirmed by this court until December 1845.  If the defendant continued to hold possession up to or after that time, we are of opinion he ought to account for the profits of the estate, from the payment of the money into court up to the surrender of the possession.   Consequently, the Common Pleas was wrong in rejecting all evidence on the subject of yearly value; though, doubtless, right in the position that the plaintiff was not entitled to recover for the whole period he claimed.

In an English court of law, this conclusion could not have been attained, because there the action of ejectment is a strictly legal proceeding, as is its emanation, the action for *mesne profits*.  With us, both may partake of an equitable character, and hence the distinction.                                         .

Judgment reversed and a *venire de novo* awarded.